UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **BRENDA ANDERSON, ET AL** | : | **DOCKET NO. 2:07-cv-1378 (lead)** |
| **VS.** | : | **JUDGE WALTER** |
| **GEORGIA GULF LAKE CHARLES, LLC, ET AL** | : | **MAGISTRATE JUDGE KAY** |

**CONSOLIDATED WITH**

LA'SHONDA ARVIE, *et al.* **NO. 2:07-CV-1380 (MEMBER)**
MARY BAKER, *et al.* **NO. 2:07-CV-1390 (MEMBER)**
LOUIS BELL, *et al.* **NO. 2:07-CV-1394 (MEMBER)**
IVEARY UPSHAW, *et al.* **NO. 2:07-CV-1395 (MEMBER)**
KATHERINE DORN, *et al.* **NO. 2:07-CV-1397 (MEMBER)**
EBONY BELLARD, *et al.* **NO. 2:07-CV-1400 (MEMBER)**
NATHAN DUGAS, *et al.* **NO. 2:07-CV-1663 (MEMBER)**
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*REPORT AND RECOMMENDATION*

The above-captioned action is the lead case in a group of consolidated lawsuits; the several cases in the *Brenda Anderson* consolidated action have themselves been consolidated with those of the *Nathan Dugas* plaintiffs' class action. Currently before the court are two motions to remand. [Doc. 16 and 40]. These motions have been referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed hereinafter, it is recommended that both motions be DENIED.

**I.
Background**

The *Anderson* lawsuits originated in the 14th Judicial District Court for Calcasieu Parish, Louisiana, where they were filed against Georgia Gulf Lake Charles, LLC (Georgia Gulf) and

1

four of its employees—Mark Jakel, Randall E. Polk, Barry Bernard, and Richard Butterworth. The *Dugas* plaintiffs filed their class action lawsuit in the 14th Judicial District Court for Calcasieu Parish, naming as defendants Georgia Gulf, Mssrs. Jakel, Polk, Bernard, and Butterworth, plus three additional individuals, Jim Little, Charles McDonald, and Bob Dibiano.[1] Plaintiffs allege that they suffered damages as a result of a leak of ethylene dichloride (EDC) from the Georgia Gulf facility on September 17, 2006. Georgia Gulf removed these cases to this court in accordance with 28 U.S.C. § 1441(a), contending that this court has diversity jurisdiction under 28 U.S.C. § 1332(a).

In earlier rulings, this court decided several issues directly applicable to the motions now before it. The court has already concluded that, for purposes of diversity jurisdiction, Georgia Gulf, as a limited liability company, is considered to have the citizenship of its sole member, Georgia Gulf Corporation. *See Report and Recommendation* [Doc. 40] and *Order* [Doc. 43] in *Richard v. Georgia Gulf Lake Charles, LLC,* 07-CV-50. Thus, for diversity purposes, Georgia Gulf Corporation is considered to be a citizen of both Delaware and Georgia. *Id., see also Report and Recommendation* [Doc. 13] and *Order* [Doc. 17] *in Hendrick v. Georgia Gulf Lake Charles, LLC,* 07-CV-1649.

Despite factual similarities to *Richard* and *Hendrick*, the instant action is distinct in that new claims are asserted, new defendants are named, and some plaintiffs have plead their case as a class action. As in *Richard* and *Hendrick*, Plaintiffs seek remand to state court. Specifically, plaintiffs in the *Anderson* consolidated cases have moved to remand contending that: (1) this court does not have original diversity jurisdiction because both the plaintiffs and the named individuals (hereinafter "employee-defendants") are citizens of Louisiana; and (2) the employee-

---

[1] The *Dugas* plaintiffs subsequently dismissed all claims against Mr. Dibiano. [Doc. 54].

defendants have not consented to removal.[2]  Plaintiffs in the *Dugas* consolidated class action have moved to remand for the same reasons as the *Anderson* plaintiffs, but also argue that this action should be remanded pursuant to certain provisions of the Class Action Fairness Act of 2005 (CAFA), Pub. L. No. 109-2, 119 Stat. 4, codified throughout sections of Title 28 U.S.C.

## II.
## Diversity Jurisdiction

Because the employee-defendants are citizens of Louisiana and Plaintiffs are citizens of Louisiana, Plaintiffs argue that complete diversity is lacking.  *See Carden v. Arkoma Assocs.,* 494 U.S. 185 (1990).  However, Defendants argue that the citizenship of the employee-defendants should not be considered because each was improperly joined.  In addition, Defendants contend that because the employee-defendants are improperly joined, it is not necessary to obtain their consent to removal.  *Jernigan v. Ashland Oil Inc.,* 989 F.2d 812, 815 (5th Cir. 1993).

This court already elaborated on the distinction between fraudulent joinder and improper joinder.  *See Richard, supra*.  As discussed, once a case has been removed, the burden lies with the removing party to prove that the court has jurisdiction to decide the claim. *Jernigan*, 989 F.2d at 815 (citing, *Dodson v. Spiliada Mar. Corp.,* 951 F.2d 40, 42 (5th Cir. 1992)).  If removal is based on the claim that non-diverse parties have been improperly joined, then the removing party must establish either: "actual fraud in the pleading of jurisdictional facts," or "an inability of the plaintiff to establish a cause of action against the nondiverse party in state court." *Smallwood v. Illinois Cent. R.R.,* 385 F.3d 568 (5th Cir. 2004) (citing *Travis v. Irby,* 326 F.3d 644 (5th Cir. 2003)).  Because there is no alleged fraud in these cases, the Court must determine

---

[2] The parties do not dispute that the amount in controversy satisfies the requirements of 28 U.S.C. § 1332(a).

3

whether the removing defendant has demonstrated that plaintiff has "no possibility of recovery" against the in-state/non-diverse defendant, *i.e.* that there is "no reasonable basis" for the district court to predict that the plaintiff might recover against the in-state/non-diverse defendant. *Smallwood v. Illinois Cent. R.R.*, 385 F.3d at 573.

Two cases from the Fifth Circuit Court of Appeals are instructive as regards the issue of improper joinder. In *Guillory v. PPG Indus., Inc.,* 434 F.3d 303 (5th Cir. 2005), the plaintiffs claimed that PPG's plant manager was liable in part for the explosion at the chemical plant. However, the Fifth Circuit held that the manager was improperly joined because: (1) the manager had delegated his general responsibility for safety to subordinates, (2) there was no evidence that the manager had delegated his responsibility without due care, and (3) there was no evidence that the manager knew or should have known that the delegated officials were not performing their duties. *Id.* at 312. In a similar case with an opposite result, *Ford v. Elsbury,* 32 F.3d 931, 936 (5th Cir. 1994), the Fifth Circuit held that the defendants failed to show that there was no possibility of recovery against a defendant plant manager because there were indications that the plant manager had actual knowledge of the dangers presented by the reactor before the explosion. *Id.* at 939. This distinction is important—in one case there was evidence that the plant manager had actual knowledge of the impending threat; in the other, no such showing.

In the instant case, Plaintiffs allege that on September 17, 2006, a cracking furnace at Georgia Gulf failed, causing a leak of EDC, which lead to an explosion that released toxic substances. It is further alleged that the initial leak was caused by Georgia Gulf's failure to properly maintain the EDC cracking furnace, and that once it was learned that a leak had occurred Georgia Gulf failed to take proper action to mitigate harm. Plaintiffs allege that the employee-defendants contributed to the excessive release of toxic chemicals by failing to

4

perform a number of personally delegated duties. For example, Plaintiffs allege that plant manager Jakel breached a duty to plaintiffs in a variety of ways, including "[fa]iling to ensure that all process units, associated equipment, and pollution control devices are properly operated, maintained, and inspected…" and [f]ailing to ensure that all cracking furnaces are properly operated, maintained, monitored, and inspected...." As to Jakel, Plaintiffs list eighteen such "non-exhaustive" allegations, sixteen of which begin with the words "Failing to." A similar litany of failures is asserted as to each of the employee-defendants. In the *Dugas* action, additional claims assert that two of the employee-defendants failed to "detect the probability of [furnace] tube failure," and failed to "authorize the timely decoke of the reactor furnace."

  Defendants have filed affidavits from each of the employee-defendants. Each denies that he intentionally released toxic chemicals. Further, each indicates that reducing or eliminating emissions and discharges of toxic chemicals, providing warnings regarding exposure to toxic chemicals, handling and storage of hazardous materials, and the maintenance, repair and replacement of equipment were not personal duties or responsibilities delegated to him, but rather were general administrative responsibilities of management. Each employee-defendant asserts that such duties were "properly delegated to qualified individuals" within departments at Georgia Gulf. Finally, each denies that he had prior knowledge indicating the events of September 17, 2006, were likely to occur or that the operation of any of the equipment posed a danger to anyone.

  The undersigned finds that, despite assertions to the contrary, Plaintiffs' allegations do not describe any personal duties owed to third parties that were delegated to any of the employee-defendants. Instead, Plaintiffs have parsed employee job descriptions into discrete elements, hoping to lay a veneer of specificity over what are, in essence, generalized claims that

5

the employee-defendants failed to prevent the incident. Plaintiffs argue, with circular logic and the benefit of hindsight, that because the incident was not averted, these particular employee-defendants breached a duty owed to the public at large to prevent such an incident from happening. Prevention and causation are separate concepts, and therein lies the fallacy of Plaintiff's theory.

The complaints mention strict liability but Plaintiffs' theory smacks of *res ipsa loquitur*, arguing, essentially, that because there was an incident of the type not typical in the absence of negligence, each of the individual employee-defendants must have been negligent. While Louisiana courts recognize the doctrine of *res ipsa loquitur*, *see* LA. CIVIL CODE. ART. 2317.1, successful application of the doctrine requires that the plaintiff prove that the instrumentality of harm was within the exclusive control of the defendants at the time of the allegedly tortuous act or omission.[3] Here, there is no evidence that any one of these individuals, or the six employee-defendants as a group, had exclusive control of the EDC cracking operation. Indeed, there were many Georgia Gulf employees involved at or near the time of the incident—too many to single out these six for *res ipsa loquitur* liability.[4] Although such a theory may prove viable against Georgia Gulf, it will not support an inference of negligence as to the individual employee-defendants. Plaintiffs have offered no evidence to suggest that the employee-defendants knew or reasonably should have known that the incident would occur. Thus, Plaintiffs' *res ipsa loquitur*-style arguments fail for lack of legally sufficient evidence of causation.

---

[3] Generally, *res ipsa loquitur* obtains when "three requirements are met: 1) the circumstances surrounding the accident are so unusual that, in the absence of other pertinent evidence, there is an inference of negligence on the part of the defendant; 2) the defendant had exclusive control over the thing causing the injury; and 3) the circumstances are such that the only reasonable and fair conclusion is that the accident was due to a breach of duty on defendant's part." *Spott v. Otis Elevator Co.*, 601 So. 2d 1355, 1362 (La. 1992).

[4] For the same reason, neither will a theory of alternative liability apply. *See Summers v. Tice*, 33 Cal. 2d 80 (1948).

6

A theory of strict liability is likewise unavailing as to the six-employee defendants. Louisiana recognizes the jurisprudentially created doctrine of absolute liability for ultra-hazardous activities. *Langlois v. Allied Chem. Corp.,* 249 So.2d 143 (La. 1971).  Such ultra-hazardous activities include "pile driving, storage of toxic gas, blasting with explosives, crop dusting with airplanes, and the like, in which the activity can cause injury to others, even when conducted with the greatest prudence and care."  *Kent v. Gulf States Utils. Co.*, 418 So. 2d 493, 498 (La. 1982).  For purposes of the motions to remand, the court need not now decide whether cracking EDC is an ultra-hazardous activity because Louisiana imposes absolute liability on the enterpriser, not its employees.  *Id.*   Here, Georgia Gulf is the enterpriser in the business of cracking EDC; the employee-defendants are not themselves enterprisers.   Therefore, any attempt to impose strict or absolute liability on the six employee-defendants, individually or as a group, would be futile.

Consequently, the undersigned finds that Defendants have carried their burden of establishing no possibility of recovery against the employee-defendants.  Accordingly, the citizenship of these six individuals can be disregarded for purposes of assessing whether there is complete diversity.  Therefore it was not necessary for Defendant to obtain the consent of the employee-defendants in order to remove to federal court.  Furthermore, because "[s]ummary judgment will always be appropriate in favor of a defendant against whom there is no possibility of recovery," *Carriere v. Sears, Roebuck & Co.,* 893 F.2d 98, 102 (5th Cir. 1990), the undersigned recommends that all claims be dismissed as to defendants Mark Jakel, Randall E. Polk, Barry Bernard, Richard Butterworth, Jim Little, and Charles McDonald.

### III.
### The Class Action Fairness Act

Plaintiffs in the *Dugas* consolidated actions also contend that their class action should be remanded pursuant to certain CAFA provisions.  Plaintiffs advance several arguments: (1) minimal diversity is lacking (2) this court's exercise of jurisdiction is precluded by 28 U.S.C. § 1332(d)(11), also known as the "home state exception," and (3) this court should abstain according to CAFA's discretionary "interests of justice" exception, 28 U.S.C. § 1332(d)(3).  Defendants dispute each of these arguments.

*A.  CAFA Statement of Law*

28 U.S.C. § 1332(d)(2) creates federal jurisdiction over class actions in which the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and there is minimal diversity—that is, where at least one plaintiff and one defendant are citizens of different states.  As discussed, *supra*, the party seeking removal has the burden to prove that federal jurisdiction is proper.  The parties do not dispute and the undersigned is satisfied that the aggregate claims of putative class members exceed $5,000,000.  Therefore, to determine whether removal was proper under CAFA, the removing party must demonstrate that minimal diversity exists.  *See Garcia v. Boyar & Miller, P.C.*, 2007 WL 1556961 *2 (N.D.Tex. May 30, 2007).

For CAFA purposes, Georgia Gulf is a citizen of the state where it has it principal place of business *and* of the state under whose laws it is organized.  *See* 28 U.S.C. § 1332(d)(10).  Georgia Gulf has admitted—for purposes of CAFA citizenship only—that its principle place of business is Louisiana.  [Doc. 51, ex. A].  Furthermore, it is undisputed that Georgia Gulf was organized under the laws of Delaware.  Therefore for purposes of the CAFA analysis, Georgia Gulf is a citizen of both Georgia and Louisiana.  As regards plaintiffs, class membership is not limited to Louisiana citizens.  The *Dugas* plaintiffs define the putative class as: "All persons

residing, working, or otherwise located in the vicinity of the containment plume emitted and dispersed into the atmosphere…" from the incident at Georgia Gulf on September 17, 2006. Furthermore, Plaintiffs have filed an affidavit that asserts that at least 17 putative class members are residents of Texas and three are residents of Arkansas. [Doc. 51, ex. B]. For reasons articulated more completely below, the undersigned finds that residency is an adequate proxy for citizenship in this case. Thus, the putative class includes citizens of states other than Louisiana. Therefore, because at least one putative class member is a citizen of a state other than those of which Georgia Gulf is considered a citizen, Georgia Gulf has satisfied its burden to establish that removal was proper on the basis of CAFA minimal diversity.

B. *The "Home State" Exception*

Under CAFA, the court must remand, when "two-thirds or more of the members of all proposed plaintiff classes, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). Although the phrase "primary defendant" is not defined in the statute, district courts interpret the term to mean "the defendants that would be expected to incur most of the loss if liability is found." *Robinson v. Cheetah Transp.,* 2006 WL 3322580, *2 - *3 (W.D.La. 2006) (citing S. Rep. No. 109-14, at 43-44 (2005)). Obviously, should the district court accept the undersigned's recommendation and dismiss all claims against the six employee-defendants, Georgia Gulf would be the *only* defendant. However, even if co-defendants remain, Georgia Gulf, is the sole defendant with resources adequate to compensate injured parties in a class action of this magnitude. The undersigned is persuaded that Georgia Gulf fits the definition of "primary defendant" as contemplated by the statute.

When the *prima facie* requirements of amount in controversy and minimal diversity are met, the party that objects to removal based on a CAFA statutory exception must show that the exception applies. *Preston v. Tenet Healthsys. Mem'l Med. Ctr., Inc. (Preston I)*, 485 F.3d 793, 797 (5th Cir. 2007); *Garcia v. Boyar & Miller, P.C.*, 2007 WL 1556961 at *2 (citing *Frazier v. Pioneer Americas LLC,* 455 F.3d 542, 546 (5th Cir. 2006)). Furthermore, "the party moving for remand under the CAFA exceptions to federal jurisdiction must prove the citizenship requirement by a preponderance of the evidence." *Preston v. Tenet Healthsys. Mem'l Med. Ctr., Inc. (Preston II)*, 485 F.3d 804, 813-14 (5th Cir. 2007) (citing *Welsh v. Am. Surety Co. of N.Y.,* 186 F.2d 16, 17 (5th Cir. 1951)). Citizenship, for purposes of proving an exception to CAFA, must be shown on the date the complaint was filed. 28 U.S.C. § 1332(d)(7); *Preston I,* 485 F.3d at 798. Consequently Plaintiffs, as the moving party, must demonstrate by a preponderance of the evidence that at least two-thirds of the putative class members were citizens of Louisiana at the time of filing.

In determining citizenship for purposes of jurisdiction, the term citizenship is synonymous with domicile. *Stine v. Moore,* 213 F.2d 446, 448 (5th Cir. 1954). A person "acquires a 'domicile of origin' at birth, and this domicile presumptively continues unless rebutted with sufficient evidence of change." *Preston II,* 485 F.3d at 814 (citing *Acridge v. Evangelical Lutheran Good Samaritan Soc'y,* 334 F.3d 444, 448 (5th Cir. 2003)). However, "residency" is not the same as "domicile" and does not equate with "citizenship." *Neeley v. Bankers Trust Co. of Texas,* 757 F.2d 621, 634 n.18 (5th Cir. 1985); *Kerney v. Fort Griffin Fandangle Ass'n,* 624 F.2d 717, 719 (5th Cir. 1980). Plaintiffs must offer "more than conclusory statements to prove citizenship at the relevant time period." *Preston II*, 485 F.3d at 803; *McMorris v. TJX Companies, Inc.*, 493 F. Supp. 2d 158 (D. Mass. 2007) (holding "bare

assertion[s of citizenship] cannot sustain the burden of proof"). However, the court need not determine the domicile of each and every class member because "class action lawsuits may become 'totally unworkable in a diversity case if the citizenship of all members of the class, many of them unknown, had to be considered'." *Preston II*, 485 F.3d at 816 (*quoting* Charles Alan Wright, Law of Federal Courts § 72, at 521 (5th ed. 1994)).

Against this backdrop of conflicting standards of proof, courts have reached different conclusions as to the sufficiency of evidence necessary to prove a CAFA exception. In many CAFA cases, courts are willing to draw inferences based on residency or domicile. For example, in *Preston I*, the court was willing to indulge "a presumption in favor of [a person's] continuing domicile...." 485 F.3d at 819 (quoting *Coury v. Prot,* 85 F.3d 244, 250 (5th Cir. 1996)). An Eastern District court held "that common sense should prevail in this closed-end class" and drew inferences of citizenship from records of home ownership. *Caruso v. Allstate Ins.,* 469 F. Supp. 2d 364, 368 (E.D. La. 2007). Courts in other jurisdictions have reached similar conclusions. *See Dunham v. Coffeyville Res., LLC,* 2007 WL 3283774, * 3 (D. Kan. 2007) (declaring "CAFA does not require exact citizenship of each member of the plaintiff class"); *Matter v. Clear Channel Comm.,* 239 F.R.D. 70, 80 (S.D.N.Y. 2006) (holding that, even without affidavits or other evidence, it was "reasonably likely that more than two-thirds of the putative class members" were citizens of the forum state); *Fiore v. First Am. Title Ins. Co.,* 2005 WL 3434074, *2 (S.D. Ill. Dec. 13, 2005) (applying a standard of "reasonable probability" to CAFA jurisdictional claim).

Other courts, however, have been unwilling to apply CAFA exceptions in the absence of discovery and direct evidence of citizenship. In *Preston I*, the Fifth Circuit deemed insufficient mere evidence of residency because the complaint was filed nearly a year after Hurricane Katrina

11

uprooted many potential plaintiffs in the putative class. The court found that dislocated individuals lacked the intent to remain that distinguishes residency from citizenship. *Phillips v. Severn Trent Environmental Svcs.*, *Inc.* was a CAFA class action lawsuit concerning the discharge of allegedly contaminated tap water over a single five-day period. 2007 WL 2757131 (E.D. La. Sep 19, 2007). In *Phillips*, the court reasoned that despite "some intuitive appeal to the claim that most of the people using the tap water between May 15 and May 20, 2007 in Plaquemines Parish were citizens of Louisiana when the complaint was filed," the plaintiffs could not carry their burden without "offering additional indicia of Louisiana citizenship of the putative class members apart from their mere residency." *Phillips,* 2007 WL 2757131 at *3.

Courts in other parts of the country have reached similar conclusions. An Alabama district court, considering a complaint that alleged a toxic exposure spanning an "extremely broad" 85-year period, held evidence of current domicile an inadequate predictor of the composition of the class. *Evans v. Walter Indus.,* 449 F.3d 1159 (11th Cir. 2006). In another toxics case, the alleged contamination was distributed "on the banks of the Ohio River" between Indiana and Tennessee, and the putative class included "former mine workers, adjoining land owners, and/or other individuals who worked/lived at or near the Squaw Creek mining operations [and] their spouses, widows, widowers, and families with children." *Musgrave v. Aluminum Co.,* 2006 WL 1994840 (S.D. Ind. July 14, 2006). Because "Plaintiffs are bound by the class as defined in their complaint," the *Musgrave* court held that "[w]ithout further evidence, the court is unable to determine at this time whether or not two-thirds or more of the members of the class are citizens of the State of Indiana." *Musgrave*, 2006 WL 1994840 at * 2. A California class action involved a claim of allegedly abusive automobile sales practices related to the sale of some 79,000 vehicles. *Kearns v. Ford Motor Co.,* 2005 WL 3967998 (C.D. Cal. Nov. 21, 2005).

The *Kearns* court explained that "[w]ithout some evidence . . . the Court cannot simply assume that one-third of the [car] buyers might not be citizens of other states or countries." *Kearns*, 2005 WL 396799 at *7. In *Schwartz v. Comcast Corp.,* the court denied the plaintiff's request for a home state exception because the putative class was defined to include not just residents of Pennsylvania but those who may have been working there and living elsewhere. 2006 WL 487915 at *5-7. In addition, the court was unwilling to draw inferences about citizenship based on residency data "[a]bsent evidence of any factor that bears on the class members' intent to remain in Pennsylvania." *Id*. at *6.

In each of these cases, the court concluded that circumstances specific to the facts of the case warranted a more detailed analysis of class citizenship. Two commons themes emerge. First, when real world circumstances suggest that evidence of residency is an insufficient proxy for citizenship—as in the aftermath of a natural disaster such as Hurricane Katrina—courts are more likely to require limited discovery to verify the numbers and citizenship of potential class members. Second, where the definition of the putative class is constrained by time and space, courts are more willing to draw inferences based on proffers of residency. But where geographic or temporal boundaries are more expansive, courts are generally skeptical of proffers of domicile absent significant discovery.

In the instant case, Plaintiffs contend that more than two-thirds of the members of the *Dugas* putative class are citizens of Louisiana. In support of their contention, Plaintiffs surveyed the pleadings from 28 existing lawsuits against Georgia Gulf arising from the incident on September 17, 2008 and report that 682 of the 702 plaintiffs therein—97 percent—are residents of Louisiana. [Doc. 51, ex. B]. Plaintiffs assert that there is "no more reliable predictor of the citizenship of the class…." [Doc. 51]. Defendants disagree, arguing that

residency does not equal citizenship and that other circumstances conspire to render Plaintiffs' statistical analysis an insufficient predictor of citizenship in this case.

Although the incident at Georgia Gulf occurred less than one year after Hurricane Rita devastated Southwest Louisiana, the Court is not aware of any significant dislocation of the population within the allegedly affected area. Thus, the undersigned finds that residency is an adequate proxy for CAFA citizenship in this case.

However, the definition of the putative class is sufficiently expansive so as to call into question the accuracy, and thus the relevance, of Plaintiffs' estimate of class composition. Plaintiffs' class definition is narrowly constrained as to time in that it is limited to individuals affected by Defendants' allegedly tortuous conduct of September 17, 2006. However, because the putative class includes persons who were "residing, working, or otherwise located in the vicinity" of the incident, Plaintiffs' contention about class composition is suspect. Georgia Gulf's facility is located in Westlake, Louisiana. Westlake lies at the north end of Lake Charles, an active international seaport, and sits astride Interstate 10, a busy freeway connecting Louisiana with the Texas border a scant 38 miles away. The incident transpired in the early evening hours, when the roadways are bustling with interstate travelers. Given the volume of traffic on Interstate 10, it is likely that a substantial percentage—perhaps the largest percentage—of individuals exposed to the allegedly toxic emissions were persons traveling the highway.

Furthermore, Plaintiffs' survey of other lawsuits is of limited relevance. Plaintiffs have attempted to extrapolate composition of the putative class from data gathered from parties known to have filed complaints against Georgia Gulf. This approach is statistically suspect and legally insufficient. There is no guarantee that persons already motivated to seek counsel and file

lawsuits represent the typical cross-section of potential litigants who will respond to a solicitation for class-action plaintiffs. The class definition is not limited to citizens of Louisiana and this court has no reliable method of estimating how many out-of-state persons are members of the putative class. As another Louisiana district court observed, "there may well be proposed classes where detailed proof of the two-thirds citizenship requirement is required." *Caruso,* 469 F. Supp. 2d at 368. This is one such class. For these reasons, the undersigned finds that Plaintiffs have not carried their burden to prove that at least two-thirds of the members of the putative class are citizens of Louisiana.

C. *The "Interests of Justice" Exception*

Plaintiffs also argue that this court should exercise its discretionary authority pursuant to 28 U.S.C. § 1332(d)(3) and decline jurisdiction. Section 1332(d)(3) applies to " a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed."

For the reasons discussed, Plaintiffs have not carried their burden to demonstrate that number of Louisiana citizens in the putative class exceeds one-third of all members. Therefore, the court should decline to exercise its discretion to abstain pursuant to § 1332(d)(3).

## IV.
## Conclusion

All plaintiffs are citizens of Louisiana. The six employee-defendants are also a citizens of Louisiana but are improperly joined. Therefore, their presence must be ignored when assessing diversity. Consequently, it was not necessary for Defendants to obtain consent to removal from the six employee-defendants. Because Georgia Gulf Corporation is a citizen of Delaware and Georgia, there is complete diversity under 28 U.S.C. § 1332(a).

Therefore, it is recommended that the *Anderson* plaintiffs' motion to remand [Doc. 16] be DENIED and that *sua sponte* summary judgments be entered dismissing all Plaintiffs' claims against Mark Jakel, Randall E. Polk, Barry Bernard, and Richard Butterworth.

In addition, the undersigned finds that removal of the *Dugas* plaintiffs' class action was proper, both on the basis of traditional diversity and under CAFA minimal diversity. Plaintiffs have not carried their burden to prove that a CAFA exception applies. Therefore, it is recommended that the *Dugas* plaintiffs' motion to remand [Doc. 40] be DENIED and that *sua sponte* judgments be entered dismissing all claims against Jim Little and Charles McDonald.

Considering the dispositions of both motions to remand, it is recommended that all requests for attorney fees be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 28th day of April, 2008.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE